**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES ex rel. ROBERT GOINGS (#B-55319), | ) ) ) | |
| Petitioner, | ) ) | Case No. 09 C 0834 |
| v. | ) ) | |
| DONALD GAETZ, Warden, Menard Correctional Center, | ) ) ) | |
| Respondent. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Robert Goings' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Goings' habeas petition.

**BACKGROUND**

**I.      Factual Background**

On March 23, 1997, the police found Walter Stevenson dead near 6848 South Honore in Chicago, Illinois, with lacerations to his hands, neck and face. Thereafter, the police found Stevenson's van, which he used as a cab, in a parking lot across from 4738 South Federal Street in Chicago. Stevenson's autopsy revealed six stabs wounds – two over the face area, three over the neck area, and one under the left hand. According to the forensic pathologist who testified at trial, these wounds were consistent with Stevenson trying to use his hand to grab or protect himself from being stabbed in the body or face.

At Goings' bench trial, the State presented a theory that Goings approached Stevenson

with a BB gun to steal his van. At trial, Detective John Polluszny testified that after the police learned that Stevenson carried a cellular telephone, they subpoenaed the telephone records and tracked the phone to Renee Gresham. After speaking to Gresham on April 10, 1997, the police arrested Goings and brought him in for questioning.

Initially, Goings denied any knowledge of Stevenson's murder or his cellular telephone. On April 11, 1997, Detective Pollusnzy, along with Detective Riley, spoke to Goings again and Goings admitted to killing Stevenson. Specifically, Goings stated that on the day of the crime he was depressed and wanted to die. Goings told the detectives that he knew that the older cab drivers at the cab stand carried guns. Thereafter, Goings went over to Stevenson pointed a BB gun at him and told him to get into his vehicle. Goings told the detectives that he then pointed the gun at the Stevenson, told him to drive, and hoped Stevenson would pull out a gun and shoot him. Instead, Stevenson took Goings' BB gun, pulled out a knife, and started swinging the knife at him. Goings stated that he got the knife from Stevenson and stabbed him in the head and neck area. After Goings drove to the area of 69th and Honore Streets in Chicago, he pushed Stevenson out the door, drove off, and took Stevenson's cellular phone.

At trial, Renee Gresham testified that she had known Goings for several years and that on March 23, 1997, Goings came to her apartment and gave her Stevenson's cellular telephone. Gresham further testified that Goings told her that earlier that day "he had got into it with a man," that they struggled, and that he stabbed him. Further, Vickie Klegman, an Assistant Cook County State's Attorney, testified at trial that she spoke to Goings, along with Detective Riley, in the early morning hours of April 12, 1997. Klegman stated that the explanation Goings provided to her mirrored the explanation that Goings gave Detectives Pollusnzy and Riley.

At trial, Goings presented a theory of self-defense. Goings specifically testified that he and Stevenson worked at a cab stand at 39th and State Streets. Further, Goings testified that Stevenson had loaned him $50, which he wanted Goings to repay. On March 23, 1997, Stevenson drove Goings to a friend's house to get the $50. Goings testified that when he returned to the van with nothing, Stevenson insisted that Goings pay him double. After Goings objected, Stevenson grabbed a knife with his left hand and brought it toward Goings. Goings further testified that they struggled with the knife and that during the struggle Stevenson was cut in the face, in the jaw, and on the neck. Stevenson then dropped the knife, reached for the door, and got out of the van. Goings testified that he immediately drove off because he "was scared knowing that cab drivers have guns."

Goings further testified that he drove to the parking lot of the cab stand and unsuccessfully tried to reach someone to tell them what happened. Goings stated that he then went to a friend's apartment and told her "I just got into it with a man at the cab stand and he ended up getting stabbed." Subsequently, another cab driver told Goings that Stevenson had been killed. Goings testified that he then went to a hotel with two acquaintances and "was really scared about what happened." In the hotel room, Goings attempted suicide. Thereafter, he was taken to the hospital by ambulance. After being released, he went to his brother's house where the police arrested him on April 11, 1997. Goings admitted that his trial testimony differed from his statement to the police.

## II. Procedural Background

On July 16, 1999, following a bench trial in the Circuit Court of Cook County, Goings was convicted of first degree murder and vehicular hijacking after which the Circuit Court

3

sentenced him to consecutive terms of sixty and thirty years, respectively. (R. 13-1, Resp.'s Rule 5 Exs., Ex. C.) On direct appeal, Goings raised three sentencing issues: (1) his due process rights were violated when the Circuit Court imposed consecutive sentences; (2) the mandatory consecutive sentencing provision of the Unified Code of Corrections was unconstitutional under *Apprendi v. New Jersey*, 520 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and (3) the sentence imposed was excessive due to his age, 24, and lack of an adult criminal background. (Ex. A.) On November 26, 2001, the Illinois Appellate Court affirmed the Circuit Court. (Ex. C.) Thereafter, Goings did not file a petition for leave to appeal ("PLA") to the Supreme Court of Illinois.

On April 25, 2002, Goings filed a pro se postconviction petition in the Circuit Court of Cook County pursuant to 725 ILCS 5/122-1 *et seq*., asserting multiple claims of ineffective assistance of trial and appellate counsel. (Ex. D.) On April 14, 2003, Goings filed a supplemental postconviction petition raising additional allegations of constitutionally ineffective assistance of counsel. (Ex. E.) The Circuit Court then appointed counsel for Goings and counsel filed a supplemental postconviction petition augmenting some of the issues raised in Goings' earlier pro se filings. (Ex. I.) On November 3, 2005, after an evidentiary hearing, the Circuit Court dismissed Goings' postconviction petition. (Ex. F.)

Goings then appealed the denial of his postconviction petition arguing that the Circuit Court erred in dismissing his postconviction petition because: (1) his allegation that trial and appellate counsel were ineffective for failing to argue that the police lacked probable cause to arrest him raised the gist of a meritorious constitutional claim; and (2) postconviction trial counsel's performance was unreasonable when she abandoned the probable cause issue to focus

4

on the warrantless arrest claim. (Ex. F.) On June 30, 2008, the Illinois Appellate Court affirmed the denial of Goings' postconviction petition. (Ex. I.) Goings then filed a PLA to the Supreme Court of Illinois raising three claims: (1) the postconviction appellate court improperly used evidence adduced at trial to justify its probable cause finding; (2) his postconviction trial counsel's performance was unreasonable; and (3) his postconviction appellate counsel was constitutionally ineffective because his appellate brief did not raise the same issues presented in petitioner's original postconviction petition. (Ex. J.) On November 26, 2008, the Supreme Court of Illinois denied Goings's pro se postconviction PLA. (Ex. K.)

### III. Habeas Petition

On February 10, 2009, Goings filed the present habeas corpus petition pursuant to 28 U.S.C. § 2254(d)(1). Construing Goings pro se petition liberally, *see Benders & Benders v. Bellows*, 515 F.3d 757, 767 (7th Cir. 2008), his habeas claims include: (1) trial counsel was constitutionally ineffective for failing to file a motion to quash his arrest and suppress evidence; (2) appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness; (3) postconviction trial counsel's performance was unreasonable; and (4) postconviction appellate counsel was constitutionally ineffective.

## LEGAL STANDARDS

### I. Habeas Standard

"Section 2254 [of title 28] circumscribes a federal court's ability to grant habeas relief to prisoners in state custody." *Malone v. Walls,* 538 F.3d 744, 753 (7th Cir. 2008). Specifically, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable

application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Calloway v. Montgomery,* 512 F.3d 940, 943 (7th Cir. 2008). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id*. at 407. "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005); *see also Williams*, 529 U.S. at 410 ("***unreasonable*** application of federal law is different from an ***incorrect*** application of federal law") (emphasis in original). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Watson v. Anglin,* 560 F.3d 687, 690 (7th Cir. 2009) (citation omitted). Also, to be reasonable, a state court's decision must be "at least minimally consistent with the facts and circumstances" of the case. *Williams v. Thurmer,* 561 F.3d 740, 746 (7th Cir. 2009); *Simpson v. Battaglia,* 458 F.3d 585, 592 (7th Cir. 2006).

## II.     Exhaustion and Procedural Default

Before bringing a habeas claim in federal court, a petitioner must exhaust all remedies

available to him in state court. *See Gonzales v. Mize,* 565 F.3d 373, 380 (7th Cir. 2009); 28 U.S.C. § 2254(b)(1)(A). Specifically, a habeas petitioner must fully and fairly present his federal claims to the state courts before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Johnson v. Loftus,* 518 F.3d 453, 455 (7th Cir. 2008). "A procedural default occurs where a habeas petitioner 'has exhausted his state court remedies without properly asserting his federal claim at each level of state court review.'" *Crockett v. Hulick,* 542 F.3d 1183, 1192 (7th Cir. 2008) (citation omitted).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

## ANALYSIS

In his four habeas claims, Goings argues that he received ineffective assistance of counsel in violation of the Sixth Amendment. To establish ineffective assistance of counsel, Goings must show (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding

7

would have been different." *See Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If Goings fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant ...."); *see also Amerson v. Farrey,* 492 F.3d 848, 851 (7th Cir. 2007). Meanwhile, "because counsel is presumed effective, a defendant bears a heavy burden in challenging his attorney's effectiveness." *United States v. Hatten-Lubick,* 525 F.3d 575, 579 (7th Cir. 2008); *see also United States v. Recendiz,* 557 F.3d 511, 531 (7th Cir. 2009) (there is a "strong presumption that the attorney performed effectively").

### I.  Trial Counsel

First, Goings maintains that his trial counsel was constitutionally ineffective for failing to file a motion to quash his arrest and suppress evidence. Although Goings presented this ineffective assistance of trial counsel claim in his postconviction petition and on postconviction appeal, Goings failed to fully and fairly present this argument in his pro se PLA to the Supreme Court of Illinois, and thus he has procedurally defaulted this claim. *See Boerckel*, 526 U.S. at 848; *Sturgeon v. Chandler,* 552 F.3d 604, 610 (7th Cir. 2009). To fully and fairly present a claim, a "petitioner must have placed both the operative facts and the controlling legal principles before the state courts. A mere passing reference to a constitutional issue certainly does not suffice." *Sturgeon,* 552 F.3d at 610 (citation omitted).

In his pro se postconviction PLA, Goings argued that: (1) the appellate court erred when it made a decision contrary to clearly established state law because it used information adduced at trial to establish probable cause for his arrest; (2) his postconviction trial counsel's

8

performance was unreasonable because she abandoned the issue that the police lacked probable cause to arrest him; (3) his postconviction appellate counsel was ineffective because he failed to file an appellate court brief in accordance with Goings' original postconviction petition. In his PLA, Goings also set forth the standards under the Illinois Postconviction Hearing Act, 725 ILCS 5/122-1 *et seq.,* and the relevant Supreme Court of Illinois rules concerning appointed counsel in postconviction proceedings. In his argument, Goings focused on the Illinois Appellate Court's alleged errors, as well as his postconviction counsels' conduct. Goings specifically took umbrage with his postconviction counsels' failure to articulate his probable cause argument the way he had stated it in his original pro se postconviction petition. Finally, Goings mentioned – in passing – that his postconviction trial counsel was ineffective for not arguing that his trial counsel was ineffective, however, a "mere passing reference to a constitutional issue certainly does not suffice," in fulfilling Goings' burden of fully and fairly presenting his claim. *See Sturgeon*, 552 F.3d at 610. In other words, Goings' brief reference to his trial counsel's assistance of counsel in the context of his postconviction counsel's conduct did not give the Supreme Court of Illinois "a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Harding v. Sternes,* 380 F.3d 1034, 1047 (7th Cir. 2004) (citation omitted). Instead, Goings' arguments in his PLA focused on his postconviction counsels' conduct and the Illinois Appellate Court's alleged errors. *See id.*

Furthermore, Goings has failed to establish cause for his default and actual prejudice or that the Court's failure to consider his ineffective assistance of trial counsel claim would result in a fundamental miscarriage of justice. *See House*, 547 U.S. at 536. Therefore, Goings has procedurally defaulted this claim.

Even if the Court were to conclude that Goings' passing reference to his trial counsel's assistance of counsel provided the Supreme Court of Illinois a fair opportunity to address his ineffective assistance of trial counsel claim, his claim is without merit because the Illinois Appellate Court's decision denying Goings' ineffective assistance trial counsel claim is not "well outside the boundaries of permissible differences of opinion," *see Watson,* 560 F.3d at 690, and thus was a reasonable application of *Strickland*. *See Williams,* 529 U.S. at 407.

In denying Goings' ineffective assistance of trial counsel claim, the Illinois Appellate Court stated in relevant part:

> The defendant contends that trial counsel was ineffective for failing to file a motion to quash arrest. The defendant maintains that the only basis for his arrest was the statement of Renee Gresham.
>
> Ms. Gresham testified that the defendant had given her the victim's cell phone and admitted to her that he had killed the victim. Ms. Gresham further admitted that she had sold the victim's cell phone. It was after obtaining a statement from Ms. Gresham that the police arrested the defendant at his brother's apartment.
>
> The defendant maintains that Ms. Gresham was attempting to shift the blame for the victim's murder from herself to the defendant. Therefore, her statement was unreliable and could not furnish the police with probable cause to arrest the defendant. Trial counsel did not file a motion to quash arrest, and on appeal, appellate counsel did not argue trial counsel's ineffectiveness for failure to file a motion to quash arrest.
>
> ...
>
> Contrary to defendant's contention, we find nothing in the record establishing or even suggesting that at any time the police viewed Ms. Gresham as a suspect in the victim's death. Ms. Gresham [was] neither charged in this case nor was there any evidence that she was offered anything in exchange for her statement. The fact that the police questioned her does not make her a suspect. The police questioned the woman to whom Ms. Gresham sold the victim's telephone as well as Ms. Gresham. Ms. Gresham appears to be just one more link on the evidentiary trial in this case.
>
> ...
>
> In this case, Ms. Gresham's statement to police independently corroborated the information they had already learned in their investigation. Prior to locating and

> questioning Ms. Gresham, the police were investigating the stabbing death of a man at 6848 South Honore Street. Ms. Gresham testified that the defendant told her that he had gotten into a fight with a man and stabbed him. He left the man's body at 69th Street and Honore Street. The defendant also gave her a cell phone which the police had discovered belonged to the victim.
>
> ...
>
> In the present case, Ms. Gresham's information corroborated what the police already knew from their investigation and directly linked the defendant to the victim's death. Under the totality of the circumstances, the police had probable cause to arrest the defendant, and a motion to quash the defendant's arrest on the basis of Ms. Greshman's unreliability would have been futile. Therefore, the defendant's constitutional right to effective counsel was not violated.
>
> Having determined that trial counsel was not ineffective for failing to file a motion to quash arrest based on the unreliability of Ms. Gresham, we conclude that appellate counsel was not ineffective for failing to raise a meritless issue.

*See People v. Goings,* No. 1-05-3795, at 3-8 (Ill.App.Ct. June 30, 2008) (unpublished order) (citation omitted).

In denying Goings' ineffective assistance of counsel claim, the Illinois Appellate Court recognized the correct legal standard under *Strickland* that Goings must show (1) counsel's representation fell below an objective standard of reasonableness and (2) but for counsel's errors, the result of his trial would have been different. *See People v. Morrison,* 375 Ill.App.3d 545, 548, 314 Ill.Dec. 531, 874 N.E.2d 896 (Ill.App.Ct. 2007) (citing *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984)). Applying the correct legal rule, the Illinois Appellate Court's decision was consistent with the facts and circumstances of this case when it concluded that because Gresham's information corroborated what the police already knew from their investigation and, under the totality of the circumstances, the police had probable cause to arrest the defendant. *See Simpson*, 458 F.3d at 592 (state court's decision must be "at least minimally consistent with the facts and circumstances of the case"). Accordingly,

the Illinois Appellate Court's conclusion that a motion to quash Goings' arrest on the basis of Greshman's unreliability would have been futile is not "well outside the boundaries of permissible differences of opinion." *See Watson,* 560 F.3d at 690. Therefore, Goings has failed in his burden of establishing that the Illinois Appellate Court applied the facts of his case in an objectively unreasonable manner. *See Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam). The Court thereby denies Goings' ineffective assistance of trial counsel claim.

## II.     Appellate Counsel

Next, Goings maintains that his appellate counsel was constitutionally ineffective for failing to argue that his trial counsel was ineffective for failing to file a motion to quash. Again, although Goings brought this ineffective assistance of appellate counsel claim in his postconviction petition and on postconviction appeal, he failed to include this argument in his pro se PLA to the Supreme Court of Illinois. In fact, there is not even a passing reference of this claim in Goings' postconviction PLA. Thus, Goings has procedurally defaulted this claim because he did not present it to every level of state court review, including the Supreme Court of Illinois' discretionary review of his PLA. *See Boerckel*, 526 U.S. at 848; *Williams,* 538 F.3d at 685. Moreover, Goings has failed to establish cause for the default and actual prejudice or that the Court's failure to consider his ineffective assistance of trial counsel claim would result in a fundamental miscarriage of justice. *See House*, 547 U.S. at 536. Therefore, the Court denies Goings' ineffective assistance of appellate counsel claim.

## III.    Postconviction Counsel

Finally, Goings argues that postconviction trial and postconviction appellate counsels'

performance was unreasonable, and thus constitutionally ineffective. The habeas statute unequivocally states, however, that "[t]he ineffectiveness of incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). In short, the Sixth Amendment does not guarantee effective assistance of counsel for collateral proceedings, such as Goings' postconviction petition and appeal brought under the Illinois Postconviction Hearing Act, 725 ILCS 5/122-1 *et seq*. *See Johnson v. McBride,* 381 F.3d 587, 590 (7th Cir. 2004); *see also Coleman,* 501 U.S. at 752-54. The Court thus denies Goings' ineffective assistance of postconviction counsel claims.

## CONCLUSION

For these reasons, the Court denies Goings' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). The Court denies Goings' motion for discovery of documents as moot.

**Dated:** June 9, 2009

              **ENTERED**

              **AMY J. ST. EVE**
              **United States District Judge**